In re the **MARRIAGE OF Christine K. JEROME and Gerald D. Jerome**

Upon the Petition of **Christine K. Jerome, a/k/a Christine A. Ginther, Petitioner/Appellee/Cross-Appellant,**

and Concerning **Gerald D. Jerome, Respondent/Appellant/Cross-Appellee).**

No. 85–150.

Court of Appeals of Iowa.

Aug. 29, 1985.

issues is to be de novo rather than in accordance with the standards of section 17A.19(8)(f).

Benjamin W. Blackstock of Eells, Blackstock, Affeldt & Harms, Cedar Rapids, for respondent/appellant/cross-appellee.

Janice A. Aasgaard of White, Stone, Aasgaard & York, Marion, for petitioner/appellee/cross-appellant.

James L. Benz, Cedar Rapids, for the parties' minor children.

Considered by OXBERGER, C.J., and SNELL and SACKETT, JJ.

SACKETT, Judge.

The marriage of Christine and Gerald Jerome was dissolved in 1982. Custody of the four children, Melanie born in 1974, Isaac born in 1975, Emily born in 1978, and Seth born in 1980, was granted to Gerald. The decree further provided Gerald was not to move from the State of Iowa prior to October 1, 1991, unless such move was agreed upon between the parties. Christine was given reasonable visitation of not less than every weekend from 8 p.m. Saturday to 8 p.m. Sunday, except one weekend per month when visitation was to commence Sunday morning, and six weeks in the summer. The decree reserved the matter of Christine's support but contained no current order for Christine to pay support.

Gerald is a dry-waller. He found employment in the Linn County area difficult after the dissolution and has been forced to take employment away from the Linn County area including a job in Colorado.

The job in Colorado appeared to precipitate the filing by Christine in May of 1984 of an application to modify the decree. She requested joint custody and asked that she be given physical care. Subsequently, Gerald filed an application for modification asking that the decree be modified to permit him to move with the children to Colorado.

After trial, the court found that Christine had failed to show she could more effectively minister to the children's best interests. The decree was modified to provide

for joint custody.[1] Physical care was to remain with Gerald. The court denied Gerald's application to modify the provision to prevent him from leaving the state. Gerald appeals and Christine cross-appealed.

## I.

We will first address Christine's cross-appeal. Christine contends she should have been awarded physical care of the children. Since the decree, the children have been cared for by Gerald with the assistance of his grandmother. The trial court determined he has done a good job. The children are well adjusted and have a close relationship with their father. They are doing well in school. Gerald has not remarried. Gerald admittedly has not had a lot of recreation time with the children because of his work schedule and Christine's weekend visitations. Aside from some clothing purchases and weekend meals, Gerald has borne the full financial responsibility of the children. The financial burden has been heavy.

Christine has remarried twice since the dissolution. She and her third husband apparently have a good relationship and his daughter resides in their home. Christine had numerous problems prior to and after the dissolution but contends that she now has her life in order.

■ We agree with the trial court that Christine has failed to prove that she has the ability to minister more effectively to the children's well-being. Christine has the burden to show by the preponderance of evidence that conditions since the dissolution decree was entered have so materially and substantially changed that the children's best interests make it expedient to award custody to her. She has failed to satisfy this burden. We affirm the trial court in its refusal to transfer physical care to Christine.

## II.

We next address Gerald's appeal. He claims he should be allowed to move with the children to Colorado. The language of the original decree limits Gerald to keeping the children in the state and allows a move only if Christine consents. The original decree approved the parties' stipulation wherein Gerald had agreed to this restriction. Christine has not consented to the children moving to Colorado. Gerald is seeking to modify the decree to allow him to take the children out of Iowa.

■ The Iowa Supreme Court has recognized that when a decree is silent regarding removal of children from the state, an order restraining removal modifies the decree. *See In Re Marriage of Lower*, 269 N.W.2d 822, 826 (Iowa 1978). Pursuant to the usual modification standard, the burden is on the party resisting removal to demonstrate that the move will detrimentally affect the children's best interests. *In Re Marriage of Frederici*, 338 N.W.2d 156, 159 (Iowa 1983). In *Frederici*, the Iowa court extended the same burden to a parent having joint custody but not physical care. *Id.* at 160.

This case differs, however, because Gerald agreed by stipulation and the approving

1. The provisions of Senate file 2163, 70th General Assembly, 1984 Regular Session, amended section 598.1 of the Code and provided: "Sec. 6. The enactment of subsection 1 of section 598.41 constitutes a substantial change in circumstances *authorizing a court to modify a child custody order* pursuant to section 598.21 and chapter 598A." [emphasis added]

Iowa Code section 598.41(1)(1985) provides: "The court insofar as is reasonable and in the best interests of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both par-

ents after the parents have separated or dissolved the marriage, which will encourage parents to share the rights and responsibilities of raising the child. The court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement. Unless otherwise ordered by the court in the custody decree, both parents shall have legal access to information concerning the child, including but not limited to medical, educational and law enforcement records." The amended statute is the basis for the change to joint custody.

decree provides that the children shall not leave the state without Christine's permission. We recognize Gerald's financial plight. The money necessary to support four growing children is considerable. The trial court did order Christine to start paying $15 per week per child as child support which, if paid, will give Gerald some financial relief.

In the case of *In Re Marriage of Deck*, 342 N.W.2d 892, 895 (Iowa App.1983), we considered modification of a decree which provided the custodial parent could not take the child out of Woodbury County except for brief stays without court approval and said:

> We do not believe a parent granted custody should be prevented from moving to another jurisdiction where the decree merely requires court approval for the move unless there is a specific showing that the move would be against the child's best interests.

In *Deck*, we approved a move by a custodial parent from Sioux City to Omaha where she had found permanent employment. *Id.*

■ Because of the language in the decree, we determine as did the trial court that Gerald bears the burden of proving a change of circumstances so as to justify a modification of the decree. The net effect of a modification to Christine will be to limit her access to the children and modify her visitation. The real issue here, therefore, is one of visitation as opposed to a custodial change. To justify a change of visitation, the petitioner must show there has been a change of circumstances since the divorce decree. However, the burden in a modification of visitation rights is different from the burden in a child custody change. Generally, a much less extensive change of circumstances need be shown in visitation right cases. *Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973).

Currently, Gerald lives with the children in Alburnett. Christine and her third husband live in Cedar Rapids. The parties are in close proximity, and visitation is easily accomplished. The visitation provisions in the decree are liberal and the evidence indicates Christine has been able to exercise these rights. It is commendable that the children have maintained contact with both parents.[2] The Iowa courts have long recognized the need for a child of divorce to maintain meaningful relations with both parents. *In Re Marriage of Leyda*, 355 N.W.2d 862, 867 (Iowa 1984). The harsh reality is that construction work is scarce in the Linn County area. Gerald has had serious problems remaining fully employed in his chosen field. Gerald has come forth with evidence of the difficulty he has finding work in the area. The work he has found is some distance from his home which keeps him away from the children for extended periods of time. More jobs in his field at a higher rate of pay are available to him in the Denver, Colorado area.

The trial court determined there is no evidence that Gerald cannot get work in Iowa. However, the record clearly reflects valid economic reasons for Gerald's proposed relocation. The Iowa courts in recent years have recognized how mobile our society is and have been reluctant to limit a custodial parent to a geographic area where there is evidence that the custodial parent has valid economic reasons for moving and the move is not predicated on an attempt to limit visitation of the noncustodial parent. *See In Re Marriage of Frederici*, 338 N.W.2d 156, 159 (Iowa 1983) (despite the fact move would limit children's access to father, court would not modify decree to grant father physical care where move would provide mother promising career and substantial increase in income); *In Re Marriage of Weidner*, 338 N.W.2d 351, 360 (Iowa 1983) (removal of children from the state, in our highly mobile society and for good economic reasons, provides no justification in itself for a custodial change); *In Re Marriage of Day*,

---

2. Gerald's merely remaining in Iowa will not guarantee Christine's close proximity to the children. This is a large state. Christine might well find visitation more difficult if Gerald were to move to the northwest corner of the state, some distance from Cedar Rapids and without the public transportation available between Cedar Rapids and Denver.

314 N.W.2d 416, 421 (Iowa 1982) (custodial mother's secretive removal of children from state did not warrant modification of decree to award custody to father); *In Re Marriage of Deck*, 342 N.W.2d 892, 895 (Iowa App.1983) (approved move of custodial mother and child from Sioux City to Omaha where mother found employment); *In Re Marriage of Lower*, 269 N.W.2d 822, 827 (Iowa 1978) (where decree silent as to move, court reversed a restraining order to prevent wife from leaving state holding it was a modification of decree and husband failed to meet burden but court did modify visitation). These cases are distinguishable in as much as they do not contain the language of this decree requiring the non-custodial parent's permission for a move.

In the case of *In Re Marriage of Weidner*, 338 N.W.2d 351 (Iowa 1983) the court said:

> Stability is very important in the lives of young children, but stability can be nurtured as much by leaving them with the same custodial parent as requiring that they live in the same neighborhood.

*Id.* at 360.

Gerald has maintained a stable home for these children, and we determine he has met his burden to justify a move. We consider among other things the following:

1. Gerald has assumed the financial responsibility for these children.
2. It is important for the family's economic welfare that Gerald have a good job not just any job. He is trained in a field that he should be able to work in.
3. Gerald should be able to work in an area close to his home so that he can spend his nonworking hours with his children and not in transportation.
4. There is no evidence the move is motivated by a desire to defeat Christine's visitation rights.
5. The record does not reflect Christine is tied to the Linn County area. She lived in several states during the parties' separation and after the dissolu-

tion. Her employment is sporatic and reflects no stability. There is no evidence if Gerald is forced to forego employment opportunities in Colorado and stay in Iowa that Christine, too, will stay in Iowa.

The decree is modified to strike out the provision requiring Gerald to keep the children in the state. The matter is remanded to the trial court to determine visitation for Christine.

### III.

The parties have filed certain motions with reference to court costs. The cost of printing the appellant and appellee's briefs and reply briefs are taxed to Christine, she being the losing party on appeal. The costs of filing three amended appendixes are taxed to Gerald. Subsequent to the filing of the decree in this matter an application to have Christine found in contempt was filed and an application to determine visitation based on Christine's separation from her third husband. These matters are not relevant to the appeal. Therefore, the costs of printing the three supplemental appendixes shall be charged to appellant. *See* Ia.Rule App.Procedure 15(b).

Christine charges that Gerald has certified costs on the appendix in excess of allowable printing costs. Gerald charges that Christine has caused matters to be unnecessarily included in the appendix. Gerald's attorney has certified that the cost of printing the appendix filed April 1, 1985, is $1,780. The appendix is 447 pages in length. Gerald or his attorney paid the Copy Shop costs of $747.60 for 24 copies of 445 pages, $4.80 for white covers on the appendix, $36 for binding and $10 for handling, plus sales tax of $31.94, for a total of $830.34. In addition, Gerald's attorney had in-office copy expense of $89. The other costs claimed by Gerald's attorney in reaching the amount in his cost certificate are not certifiable as printing costs. The amounts may have been made a part of an attorney fee claim, however, no request for attorney fees was filed by Gerald. We determine the certifiable printing costs to be

$919.34. These costs are taxable to Christine who has already advanced $650 of said amount.

We determine the printing costs on the appendix are taxable to Christine. We therefore need not address Gerald's motion to tax costs because Christine included unnecessary matters in the appendix.

Christine has requested attorney fees pursuant to Iowa Code section 598.36. Her request is denied.

AFFIRMED AS MODIFIED AND REMANDED.