**In the Interest of T.R., A Child,**

**Appeal of V.R., Mother.**

**No. 89–1487.**

Court of Appeals of Iowa.

June 26, 1990.

As Corrected Oct. 24, 1990.

Jerry R. Foxhoven, of Peddicord, Wharton, Thune, Foxhoven & Spencer, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellee State.

Susan Conn, of the Youth Law Center, Des Moines, guardian ad litem for the child.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

Appellant mother appeals an order removing her natural child from her care. We reverse the order of removal.

The record in this case is extremely sparse. On November 10, 1987, a petition was filed asking the child born in July 1980 be declared a child in need of assistance. The petition claimed the child had been sexually abused by her father. The petition contained no other allegations of abuse by either parent.

On January 12, 1988, a hearing was held. The mother appeared. The father was served but did not appear. The court found the allegations of the State's petition were true. The mother's request for an order that the father not contact the child was granted.

On February 24, 1988, a dispositional order was entered, finding the child should remain in her mother's custody, subject to supervision by the Department of Human Services. It was found the child and the mother were in therapy at Broadlawns Medical Center and the therapy should continue. On July 22, 1988, another order was entered. It provided therapy at Mercy Psychological Services was important for the child and mother, and they were ordered to participate in the therapy. The child was ordered to remain in the mother's custody. The father was ordered to have no contact with the child, except for that arranged in therapy. The matter was ordered to remain under the jurisdiction of the court.

On January 18, 1989, an order nearly identical to the July 22, 1988 order was entered and the matter was ordered to again come on for review on July 19, 1989. On July 19, 1989, the matter came on for review hearing. When the hearing was called, a person named Phil Douglas, who identified himself as "an officer of this court" stated regarding the mother, "The mother was notified of the hearing today but is not present and we have not been able to locate her." Apparently before the hearing, for reasons no one made any attempt to put in the record, the State, guardian ad litem and the attorney for the father agreed a removal order should issue. The attorney for the mother appeared, indicated he had had no contact from the mother, and asked the matter be continued, or in the absence of the continuance, he asked the State put on its witnesses so he would have the opportunity to cross-examine the witnesses.

The court, without taking any evidence, overruled the mother's motion for continuance, accepted the recommendation of the State, and found that there was no necessity for evidence on the basis of the stipulation of the other parties. The court told the attorney for the mother he could put on evidence and the burden at that point was on him. The attorney for the mother objected.

The court then entered an order finding: "The whereabouts of the child is unknown

and it would be in the best interest of the child, that she be removed from her mother's custody as soon as she is located." The court made no finding the child was in imminent danger or that there was not sufficient time for a petition to be filed. We were told at oral argument that shortly after the order issued, a social worker went to Florida where the mother and child were, took the child from the mother's custody and returned with the child to Iowa. The child was put in foster care where she continues to reside.

The mother appeals the removal order. She contends the juvenile court erred by ordering removal without hearing any evidence concerning the conditions in the mother's home or the suitability of the mother's care. The State responds that the removal was proper under Iowa Code section 232.78 because the mother had fled from Iowa and had thereby demonstrated she could not be trusted with the child's welfare.

## I.

█ The initial question is whether the State is correct and the removal is justified under Iowa Code section 232.78. Section 232.78 provides in relevant part:

1. The juvenile court may enter an ex parte order directing a peace officer to take custody of a child before or after the filing of a petition under this chapter *provided all* of the following apply:

a. The person responsible for the care of the child is absent, or though present, was asked and refused to consent to the removal of the child and was informed of an intent to apply for an order under this section, or there is reasonable cause to believe that a request for consent would further endanger the child, or there is reasonable cause to believe that a request for consent will cause the parent, guardian, or legal custodian to take flight with the child.

b. It appears that the child's immediate removal is necessary to avoid imminent danger to the child's life or health.

c. There is not enough time to file a petition and hold a hearing under section 232.95. (Emphasis added.)

Our legislature, in enacting this section, obviously recognized, under certain limited circumstances, there will always be a need to remove some children from situations quickly. It also recognized, however, that a parent's right to have custody of his or her child is entitled to respect and should be terminated only on the utilization of certain safeguards. *See Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

The legislature carefully drafted the statute to provide all three criteria of section 232.78(1) must apply before an ex parte removal order issue. There was evidence the mother and child were not in the state, therefore, the first criteria was met. The trial court did not find the child was in imminent danger. The State introduced no evidence the child was in any danger. The State instead appears to rely on the fact that the mother had left the state to support the element of imminent danger.

The mere taking of one's own child out of the state of Iowa has never been held to be an act that is evidence the child may suffer imminent harm. Nor is there any basis to accept a view so parochial that a parent creates harm by removing his or her child from this state. Furthermore, our courts have recognized the mobility of our society and have generally been reluctant to limit a custodial parent to a geographic area. *See In re Marriage of Frederici,* 338 N.W.2d 156, 159 (Iowa 1983); *In re Marriage of Weidner,* 338 N.W.2d 351, 360 (Iowa 1983); *In re Marriage of Jerome,* 378 N.W.2d 302, 305 (Iowa App.1985). And interstate compacts readily provide for supervision in another state if it is determined necessary.

█ The trial court, while not finding there was imminent danger, determined the order was in the best interest of the child. Our own de novo review of the sparse record would cause us to reach the opposite conclusion. Section 232.102(4) provides wherever possible the court should permit a child to remain at home. There is a

rebuttable presumption the best interests of children are served when custody remains with their natural parents. *In re Chad*, 318 N.W.2d 213, 218 (Iowa 1982).

By promoting autonomous families, we best promote the interests of children as well as those of parents. *See* Wald, *State Intervention on Behalf of Neglected Children: Standards for Removal of Children* 28 Stan.L.Rev. 623, 638 (1976). Generally children's needs are best met by helping parents meet their needs. *See id.* at 638. Foster care is generally considered to be an alternative to leaving a child in its home. *Id.* at 644. Separating children from parents has a negative impact on children, even children from bad homes. Most children are strongly attached to their parents and as far as the child's emotions are concerned interference with parental ties whether to a fit or unfit psychological parent are extremely painful. *Id.* at 645. Removal from a home generates insecurity in a child and affects the child's ability to form future attachments. The inability to form attachments may permanently impair a child's ability to form living relationships. *Id.* at 670.

This child obviously has suffered the trauma of removal from the only family she has ever known,[1] and resides with a different family or families. Even if returned home, this child will suffer insecurity because of the removal, plus confusion about the different environments, and a resulting inability to form lasting relationships as an adult.

We do recognize when a child has been adjudicated a child in need of assistance, retention of the child in the jurisdiction is frequently necessary so custody can be supervised. However, at three hearings the court allowed the child to remain in the mother's care. There were no geographical limitations imposed on the mother in any adjudication order. There is no evidence and no finding the mother's conduct was responsible for the adjudication or the mother was guilty of any improper conduct toward the child. Other than counseling, the mother was not under any directives that required monitoring.

The child's adjudication was the result of the father's acts. There is no evidence in this record of any act by the mother which would have supported a finding the child was a child in need of assistance. Three times the court issued orders without any articulated reservations directing the child remain in her mother's custody. There was no showing of any effort made to locate the mother. There was no showing that supervision of the mother and child (if supervision were necessary) could not be accomplished in the other jurisdiction. We note, however, there had been insufficient concern to order supervision in Iowa. Additionally, there is no showing there is not time to file a petition and hold a hearing under section 232.95.

This really was not an ex parte proceeding. The mother's attorney was present. The attorney for the State and child were present. No one alleged or contended a hearing could not be held. The trial court should not have accepted the stipulation without hearing the basis for the stipulation and making an independent determination to assure the child was protected. The ultimate decision for the child should be that of the court and not that of the guardian or the State. *See generally Conklin v. Conklin*, 257 Iowa 259, 263, 132 N.W.2d 459, 461 (1965); *In re Estate of Heller*, 401 N.W.2d 602, 606–07 (Iowa App. 1986).[2]

---

1. There the record fails to reflect the number of children in the mother's custody, but we were led to believe at oral argument there were other children.

2. While not argued by appellant mother, we note that even if a temporary removal should have issued, the Rules of Juvenile Procedure contemplate a full hearing within ten days. Rule 4.6 provides:

**RULE 4.6  TEMPORARY REMOVAL HEARINGS**

Whenever a child has been removed pursuant to Iowa Code section 232.78 or 232.79, a hearing under Iowa Code section 232.95 shall be held within ten days of such removal. Iowa Code section 232.95 provides in applicable part:

**Hearing concerning temporary removal.**

Finding no evidence to support a finding the child was in imminent danger, or that a hearing could not be held, we reverse the order removing the child from the mother's custody. The child remains a child in need of assistance. The child shall be returned to her mother's custody thirty days from the date of the filing of this petition. This allows ample time for the State and/or representative of the child to ask the trial court to schedule a hearing on the issue of the child's removal from her mother's custody if they still determine that to be necessary.

REVERSED.

OXBERGER, C.J., concurs.

HAYDEN, J., specially concurs.

HAYDEN, Judge (specially concurring).

I concur in the result only.

1. At any time after the petition is filed any person who may file a petition under section 232.87 may apply for, or the court on its own motion may order, a hearing to determine whether the child should be temporarily removed from home. Where the child is in the custody of a person other than the child's parent, guardian or custodian as the result of action taken pursuant to section 232.78 or 232.79, the court shall hold a hearing to determine whether the temporary removal should be continued.

2. Upon such hearing, the court may:

a. Remove the child from home and place the child in a shelter care facility or in the custody of a suitable person or agency pending a final order of disposition if the court finds that substantial evidence exists to believe that removal is necessary to avoid imminent risk to the child's life or health.

If removal is ordered, the order shall, in addition, contain a statement that removal from the home is the result of a determination that continuation therein would be contrary to the welfare of the child, and that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home.