# IN THE COURT OF APPEALS OF IOWA

No. 16-2180
Filed December 6, 2017

**IN RE THE MARRIAGE OF JENNIFER LYNN GEORGE
AND ADAM GEORGE**

**Upon the Petition of
JENNIFER LYNN GEORGE,**
　　　　Petitioner-Appellant,

**And Concerning
ADAM GEORGE,**
　　　　Respondent-Appellee.
_____

　　　　Appeal from the Iowa District Court for Polk County, David M. Porter, Judge.

　　　　A mother appeals a district court ruling on her modification petition and the father's counterclaim for support modification.  **AFFIRMED AS MODIFIED.**

　　　　Elizabeth A. Kellner-Nelson of Kellner-Nelson Law Firm, P.C., West Des Moines, for appellant.

　　　　Matthew J. Hemphill of Bergkamp, Hemphill & McClure, P.C., Adel, for appellee.

　　　　Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Jennifer George appeals a district court ruling on her modification petition. The district court made limited modifications to the visitation schedule and modified the child-support award using Jennifer's earning capacity and Adam George's actual earnings. Jennifer argues the visitation schedule should be further modified for purposes of consistency and the child-support modification resulted in substantial injustice. Adam argues the modification petition was correctly denied and the child support award was correctly modified.

### I. Background Facts and Proceedings

Jennifer and Adam were married for nearly twelve years. The parties share two children, born in 2005 and 2009. Jennifer and the parties' two children moved to Iowa in March 2013, and have lived with Jennifer's parents since relocation. The parties dissolved their marriage by stipulation entered on July 3, 2013, in Harris County, Texas. Adam moved to Iowa in July 2013, shortly after the dissolution. Adam married his current wife, Elizabeth, in November 2014.

Jennifer became a licensed teacher in Iowa in 2001 and was relicensed upon her return to Iowa in 2013. Although Jennifer did not work outside the home for the last three to four years of the parties' marriage, she is now employed as a substitute teacher in the West Des Moines School District. Jennifer also works part-time at her church and as a server at a restaurant. During the marriage, Adam worked as a pilot for ExpressJet. He began working for Spirit Airlines in February 2015. This change resulted in a salary reduction of more than $38,000.00 for two consecutive years. Elizabeth is a business analyst at Mercer.

Jennifer filed a petition to modify the original decree on May 6, 2014. She requested the court to modify the visitation schedule from a non-traditional system of Adam choosing certain times when he is not working to a traditional, every-other-weekend visitation schedule. Jennifer made a number of other claims for a more structured visitation schedule, including a right of first refusal provision for any time a parent cannot exercise visitation and a requirement that the children be with the parent, not "girlfriends, step-parents or random babysitters." Adam argued no significant changes had occurred to warrant visitation modification that had not been within the contemplation of the court that entered the original decree. Adam counter-claimed for a reduction in his child support based on a substantial and material change in circumstances of more than ten percent in the amount he should be required to pay. He made other claims including, but not limited to, a proposed requirement that the parents agree on all medical, mental health, and chiropractic care, and extracurricular sports and clarification on claiming the children for tax purposes.

The district court found substantial and material changes in circumstances had occurred regarding the visitation schedule since the entry of the dissolution decree. The court also found a substantial and material change in circumstances had occurred "in that Respondent's child support obligation does vary by 10% and should be and is hereby modified pursuant to Iowa Code § 598.21(C)(2)(A) [(2014)]." The district court modified the visitation provisions by removing veto power on parenting time, and concluded that the variable nature of Adam's work hours made the schedule proposed by Jennifer impractical. The holiday schedule was also modified because the court found it was "in the children[s']

best interest to be with either [Jennifer] or [Adam] on holidays and special occasions." Adam's child support was reduced as of January 1, 2017, from $1144.84 to $526.46, and would raise to $700.76 as of March 1, 2017, based on Adam's expected raise in income.

Jennifer appeals.

## II. Standard of Review

Review is de novo, in which we examine the entire record anew. Iowa R. App. P. 6.907; *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). Weight is given to factual findings of the trial court, especially when concerning the credibility of witnesses, but we are not bound by those findings.[1] *Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994).

## III. Modification of Visitation

Jennifer argues her request for a structured visitation schedule will not change the amount of time Adam spends with the children, but will simplify the schedule for the children. Jennifer notes three counselors have recommended a set schedule is in the children's best interests. Jennifer states that Adam's time is often selected on weekends, and includes a significant amount of time when he is traveling for work.[2] She argues a set schedule, one day a week and every other weekend, for Adam's visitation, would benefit the boys. Finally, Jennifer notes the Christmas-time schedule formulated by the district court has a two-hour

---

[1] The decree filed by the court made no credibility findings, and only limited facts. The decree did not separately state conclusions of law. *See* Iowa R. Civ. P. 1.904(1).

[2] Jennifer takes issue with Adam selecting visitation time when he is traveling for work. Jennifer alleges that during this time the children are with Elizabeth, not Adam, and the district court's removal of her veto power leaves her with no ability to override Adam's choice.

overlap on Christmas Day. Jennifer asks that the overlap be changed so each day, Christmas Eve and Christmas Day, lasts from 10:00 a.m. until 10:00 a.m. the following day.

Adam argues the district court correctly found no material change in circumstances and therefore denied Jennifer's proposed visitation schedule and request for modification.[3] Adam does not specifically resist Jennifer's request to clarify the overlapping Christmas hours.

Upon our review of the record, we find the overlapping time on Christmas Day is the result of a clerical error. We correct the Christmas Day time to December 25 at 12:00 p.m. to December 26 at 12:00 p.m. *Cf. In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007) (correcting a clerical error).

To prevail on a petition to modify visitation, a "petitioner must show there has been a change of circumstances since the divorce decree." *Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973). "However as to modification of visitation rights as compared to custody changes the general rule is that much less extensive change of circumstances need be shown in visitation right cases." *Id.* Changes since entry of the original decree must be material changes. *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994). "Generally, a much less extensive change of circumstances need be shown in visitation rights cases." *In re Marriage of Jerome*, 378 N.W.2d 302, 305 (Iowa 1985). Courts should consider the best interests of the child, which "ordinarily requires

---

[3] This is incorrect. The district court ruling states in finding seven, "After hearing the statements of the parties, their witnesses, and counsel, and reviewing the exhibits presented by each party, the Court finds that there have been significant material changes in circumstances since the entry of the Dissolution of Marriage Decree concerning any change in the visitation schedule."

continuing association with his noncustodial parent unless the contrary is clearly shown." *Donovan*, 212 N.W.2d at 453. Iowa courts consider a number of factors to rule on modification. *See, e.g.*, *Jerome*, 378 N.W.2d at 305–06 (weighing factors relating to the ability of both parents to work in a geographic area, history, and motivation of one parent to move the children out of the area); *Donovan*, 212 N.W.2d at 453 (considering the ages of the children, a parent's new-home environment, and a possibility of a better relationship being established between one parent and the children); *Nicolou*, 516 N.W.2d at 909 (relying on credibility determinations made by the district court regarding one parent who influenced negative feelings the child held for the other parent).

Jennifer's argument revolves around the unstructured and unpredictable nature of Adam's visitation time. Adam argues that, at the time of the original stipulation, his unpredictable schedule was the very reason for the unstructured visitation agreement, and was contemplated in the original decree. Although Adam changed employers after the entry of the original decree, he is still a pilot with a variable work schedule. The original decree describes the process for Adam to choose his visitation as follows:

> Adam George shall provide a copy of his work schedule within 48 hours after receipt of his next month's schedule. For the months of January, February, March, April, May, September, and October of each year Adam George shall provide Jennifer George with notice of his 10 day selection possession period within 48 hours after receipt of his next month's work schedule.

It is apparent that the Texas court, and both parties, were well aware of the unstructured nature of Adam's work schedule. Thus, the unpredictability of visitation was something the original court understood and there has been no

material change in circumstances. Accordingly, we agree with the district court that, although material changes have occurred since the entry of the original stipulated decree to warrant the removal of both parents' veto power and specifically designate holiday time, the structured schedule Jennifer proposes would not better serve the best interests of the children.

## IV. Child Support

Jennifer argues the district court erred in imputing income to her, but not to Adam.[4] She relies on Adam's voluntary employment change and resulting income reduction. She further argues the district court made no written finding that "if actual earning were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child[ren] or do justice between the parties." Iowa Ct. R. 9.11(4). Jennifer argues she has never made the $45,000.00 salary imputed to her and she is not intentionally underemployed. Ultimately, Jennifer argues child support should be calculated using her actual income of $28,000.00.

---

[4] Jennifer makes two more requests that are not resisted. Jennifer requests we correct the discrepancy between the dates the modified child support is to begin on pages two and eight of the district court order. On page two, the court found support should be modified to $526.46 beginning January 1, 2017. On page eight, the court ordered the $526.46 child support "shall commence on the first day of the month following entry of the Decree." The district court e-filed the modification order at 6:15 p.m. on November 30, 2016. We believe the page eight wording was boilerplate language, and the January 1, 2017, specific finding on page two was the true intent of the court and should control.

Jennifer also requests that the district court's failure to issue an income withholding order should be corrected and an amended order issued pursuant to Iowa Code 598.22(2). We find no record of this issue being raised before the district court. Accordingly, the issue has not been properly preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Furthermore, there is no need for us to take action because Jennifer is free to request such an order from the district court at any time.

Adam argues the district court correctly used Jennifer's earning capacity to calculate the child-support award. Adam relies on *In re Marriage of Hart*, in which this court concluded that a mother's decision to leave full-time employment and return to school was not made for the purpose of reducing her child-support obligation, and held the district court properly used her minimum income for the calculation. 547 N.W.2d 612, 615 (Iowa Ct. App. 1996); *see also In re Marriage of Blum*, 526 N.W.2d 164, 165–66 (Iowa Ct. App. 1994) (finding father had valid reason for resisting relocation to find a higher-paying job, and pay cut was neither self-inflicted nor voluntary).

The child support guidelines exist to "provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." Iowa Ct. R. 9.3(1). The amount prescribed by application of the guidelines may be adjusted "upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children or to do justice between the parties under the special circumstances of the case." Iowa Ct. R. 9.4. When a noncustodial parent has more than 127 days of visitation per year, that parent will have a credit applied to their support obligation in compliance with Iowa Court Rule 9.9. If a court chooses to vary a custody award from application of the guidelines, it must issue a written finding stating the application would be unjust or inappropriate. Iowa Ct. R. 9.11. If that written finding is made, courts will consider voluntary unemployment or underemployment to impute income to a party to avoid substantial injustice or make necessary adjustments "to provide for the needs of the children." Iowa Ct. R. 9.11(4).

To establish a claim for modification of child support, "some material and substantial change since the date of the decree must be shown in the circumstances of the parties, financial or otherwise, making it equitable that other or different terms be imposed." *Donovan*, 212 N.W.2d at 453. These may include "[c]hanges in the employment, earning capacity, income, or resources of a party." Iowa Code § 598.21C(1)(a). Courts will consider the factors listed in Iowa Code section 598.21C(1)(a)–(*l*). The moving party must establish substantial changes by a preponderance of the evidence. *In re Marriage of Michael*, 839 N.W.2d 630, 636 (Iowa 2013). The changes "must be permanent or continuous rather than temporary" and must not have been contemplated by the court entering the decree. *Id.* Additionally, "a substantial change in circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines established . . . ." Iowa Code § 598.21(C)(2)(a).

The original stipulated decree set Adam's child support obligation at $1144.84 per month. The district court entered a finding based on Adam's testimony that his annual income is $33,264.00, but would increase to $62,208.00 as of February 2017. The district court found "a substantial and material change of circumstances in that [Adam]'s child support obligation does vary by 10% and should be and is hereby modified pursuant to Iowa Code § 598.21(C)(2)(a)." Adam's obligation was reduced to $526.46, but increased to $700.76 as of March 1, 2017. The district court also awarded Adam a twenty percent extraordinary visitation credit based on the visitation schedule.

On our review of the record, we agree with the district court that Adam's child support obligation under the original stipulated decree varies by more than ten percent of his obligation under the child support guidelines in effect at the time of the modification hearing and order. Accordingly, we agree with the district court that a substantial change in circumstances has occurred pursuant to Iowa Code section 598.21C(2)(a).

Adam testified that his move from Texas to Iowa and employment change were caused by a desire to live near his children and have a greater earning capacity in the long run. Iowa courts have held that income reductions with valid purpose or that are not aimed in bad faith at reducing a child support award may influence a court's modification determinations. *See Hart*, 547 N.W.2d at 614–15 (finding a mother's decision to leave the work force to return to college and earn a degree with greater income potential resulted in a proper award of support based on her minimal income not her earning potential); *Blum*, 526 N.W.2d at 165–66 (finding a father's lowered income due to a desire to live near his children combined with an involuntary reduction in pay did not result in substantial changes warranting child support modification). We find Adam's change of employment to be closer to where his children live was made in good faith, and his current employment status does not warrant denial of a finding of substantial change of circumstances.

Although Adam's probationary salary was temporary, his income as of February 2017 with Spirit Airlines was still less than the income he earned with ExpressJet. Furthermore, although Adam expects his income to increase

throughout his tenure at Spirit, no schedule or specified date of increase is provided in the record. Thus, the income reduction is permanent.

We now consider whether the district court properly used Jennifer's earning capacity to calculate the modified child-support award.[5] There is a rebuttable presumption that the amount of child support resulting from application of the guidelines is correct. Iowa Ct. R. 9.4. While adjustments may be made, deviation from the guidelines is generally discouraged. *In re Marriage of Jones*, 653 N.W.2d 589, 593 (Iowa 2002). In determining whether to use a parent's actual income or earning capacity, a court may consider "whether the parent's inability to earn a greater income is self-inflicted or voluntary." *In re Marriage of McKenzie*, 709 N.W.2d 528, 533 (Iowa 2006).

In *McKenzie*, a father moved away from Iowa, where his children lived, to South Carolina to be with a girlfriend. *Id.* at 533. McKenzie had gainful employment in Iowa and no employment secured in South Carolina, and following a fruitless job search in South Carolina, took a job earning more than $10,000.00 less than he earned in Iowa. *Id.* at 533–34. The *McKenzie* court ultimately calculated McKenzie's child-support award based on his earning capacity. *Id.* The court reasoned that McKenzie made a selfish, voluntary choice to move, regardless of his commitment to provide for the welfare of his child, and that using his actual earnings "would result in substantial injustice between the parties." *Id.*

---

[5] Jennifer correctly argues that a district court must make a written finding that "if actual earning were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child[ren] or to do justice between the parties." Iowa Ct. R. 9.11(4). Although we do not have the benefit of such a finding, we will proceed with our de novo review of this issue.

Jennifer argues her employment as a substitute teacher allows her to save money by minimizing her child-care costs. She argues full-time employment as a teacher would result in her working more than sixty hours per week and would force her to seek, and pay for, child care. Jennifer also argues that she has never earned $45,000 annually, and if the court wanted to use this number as her earning capacity, it should have also considered daycare costs.

We acknowledge that educators in Iowa often spend countless hours dedicated to the betterment of children. On our de novo review of the record, we find that the parties' children were eleven and seven years of age at the time of the modification order. Thus, full-time child care is limited because the children are school-age and spend a majority of the day in school. Furthermore, although some care or transportation may be needed before or after school, we cannot say that justifies Jennifer's voluntary decision to remain employed part-time for the purposes of a child-support award determination. Accordingly, we find no error in the district court's decision to use Jennifer's earning capacity rather than her actual income.

## V. Attorney Fees

Both parties have requested an award of appellate attorney fees. Adam requests all of his incurred fees, and Jennifer requests $4000.00. Both parties also requested attorney fees at the district court level, both of their requests were denied. Pursuant to Iowa Code section 598.36, attorney fees on modification may be awarded to a prevailing party at the court's discretion. On appeal, "attorney fees are not a matter of right, but rather rest in this court's discretion."

*In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).  Like the district court, we decline to award attorney fees on appeal to either party.

Costs on appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**