In re the MARRIAGE OF Leila
BURWINKEL and Robert
Burwinkel,

Upon the Petition of Leila Burwinkel,
n/k/a Jennifer Roberts,
Petitioner–Appellant,

And Concerning Robert Burwinkel,
Respondent–Appellee.

No. 87–992.

Court of Appeals of Iowa.

May 31, 1988.

Ann Herr and Patricia Fetzer, University of Iowa College of Law, Iowa City, for petitioner-appellant.

Lloyd Humphreys of Humphreys & Associates, Cedar Rapids, for respondent-appellee.

Karen A. Volz, Cedar Rapids, former guardian·ad litem, for minor child and amicus curiae.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

HAYDEN, Judge.

Petitioner, Leila Burwinkel, n/k/a Jennifer Roberts, appeals the district court's denial of her application to modify the joint custody and visitation provisions of the parties' dissolution decree. Jennifer Roberts asserts respondent, Robert Burwinkel, physically abused and neglected their son, Billy, and this conduct warrants granting her sole custody and restricting Burwinkel to supervised visitation with Billy.

The marriage of the parties, on May 12, 1979, was dissolved on April 2, 1984. Billy, the only child of their marriage, was born December 27, 1980. The dissolution decree provided by stipulation the parties would have joint custody of Billy, with physical care being entrusted to Roberts, subject to Burwinkel's visitation privileges. Billy suffers from infant apnea and bradycardia, which require that he wear a heart monitor when he sleeps. He has also been diagnosed as suffering from hyperactivity. This case arose from an incident which occurred during one of Burwinkel's visitation periods.

On February 6, 1986, Billy hid some money and keys belonging to Dennis Robison, a friend and boarder of Burwinkel. When questioned, Billy refused to tell Robison and Burwinkel where these items were located. Burwinkel then spanked Billy with a paddle and had him stand in the corner while he and Robison searched for the items. When they returned, Robison dis-

covered Billy had apparently poked a hole in his waterbed with a steak knife. This resulted in a second spanking. Later that day, Billy poked another hole in Robison's waterbed and again was spanked. Burwinkel contended at trial and still insists on appeal he merely administered light swats, justified on each occasion as discipline for a specific misdeed. If the spankings were excessive, Burwinkel attributes it to his lack of knowledge at that time regarding Billy's hyperactivity.

In addition to the allegation of child abuse on February 6, 1986, Roberts also alleges Burwinkel had repeatedly failed to properly supervise Billy during his visitation periods. She noted Billy had, during separate visits to Burwinkel's, burned two of his fingers on a soldering iron and burned his arm on a welding torch. On another occasion, Billy was able to wander away from Burwinkel's, where he had been left in the care of Burwinkel's daughter from a previous marriage. He was found approximately a mile away from the residence a short time later. Roberts also contends Burwinkel has not always used the heart monitor during Billy's overnight visits.

Based on the foregoing, Roberts brought this action to modify the joint custody and visitation provisions of the parties' dissolution decree. The district court denied both of her requests and this appeal followed.

Our scope of review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the district court but are not bound by them. Iowa R.App.P. 14(f)(7). The standard for modification of visitation privileges is the demonstration by the party seeking modification of a change of circumstances since the entry of the dissolution decree. *In re Marriage of Lower*, 269 N.W.2d 822, 826 (Iowa 1978); *In re Marriage of Glass*, 213 N.W.2d 668, 670 (Iowa 1973). For modification of custody the change of circumstances must be substantial. Iowa Code § 598.21(8); *Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973).

 Our review of the record persuades us Burwinkel spanked Billy on February 6, 1986, with excessive force. A large portion of Billy's buttocks and lower back was covered with bruises. Although we can understand how exasperated Burwinkel must have been by Billy's misconduct, that cannot excuse his hitting the child with such violence after losing his temper. We conclude Roberts has shown a change of circumstances justifying temporarily restricting Burwinkel to supervised visitation while he continues to receive services to improve his parenting skills. We do not believe the district court's order that Burwinkel eschew corporal punishment is sufficient to protect the best interests of Billy. Burwinkel's visitation shall remain supervised for at least 12 months from the date of this opinion. After that time, Burwinkel may petition the district court and seek to demonstrate his parenting skills have improved so as to warrant resumption of unsupervised visitation.

We reverse the decision of the district court regarding modification of visitation, and remand for the purpose of fixing reasonable supervised visitation.

We are not persuaded, however, this one instance of excessive corporal punishment and the isolated incidents of inadequate supervision justify modifying the joint custody provision of the parties' dissolution decree. Roberts shall resume compliance with the informational obligations of the decree. We affirm the decision of the district court regarding modification of custody.

Costs are to be taxed one-half to Roberts and one-half to Burwinkel.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

DONIELSON, J., concurs.

OXBERGER, C.J., dissents.

OXBERGER, Chief Judge, dissenting.

I respectfully dissent. The trial court found:

Although the conduct of the child warranted discipline for taking money (even as a prank) and punching holes in the water bed, the court does not condone in

any way the hard spanking administered to the minor child.

This appears to be the only time this sort of conduct has occurred. It occurred almost 16 months ago (now 28 months).

The spanking occurred on February 6, 1986. The father voluntarily refrained from contacting the boy until supervised visits were set up by the Mercy Hospital Protective Homemaker Service. These were continuing up to date of the trial court's order of July 8, 1987. The trial court concluded:

It appears undisputed that Billy loves respondent and that respondent loves and is concerned about Billy. He has shown his concern by his active participation in this litigation, by not insisting on his decretal visitation rights until professional assistance was sought, by seeking such professional assistance and by maintaining communication and limited visitation with his son. No parent is perfect. The court considers that respondent is entitled to resume unsupervised visitation with his son, whereby they can have a more normal father-son relationship and do activities together. Both parties should fully cooperate in order to make Billy's youthful years as happy as can be the case.

I would affirm the trial court's judgment.