Florence R. NICOLOU,
Plaintiff–Appellant,

v.

Frank H. CLEMENTS, Defendant–
Appellee.

No. 93–0649.

Court of Appeals of Iowa.

Feb. 25, 1994.

James L. Sayre of James L. Sayre, P.C., Des Moines, for plaintiff-appellant.

Ronald L. Wheeler, Des Moines, for defendant-appellee.

Heard by SACKETT, P.J., HABHAB, J., and PETERSON, S.J.*

HABHAB, Judge.

In this modification action, the plaintiff-appellant asserts on appeal that the trial court erred in (1) refusing to modify the

* Senior judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

visitation provisions of the paternity decree and (2) in failing to allow the attorney fees as requested in the application for attorney fees. We affirm.

The parties to this action are the parents of Sarah Rose Nicolou, born August 9, 1986. The paternity of the defendant-appellee Sarah was established by court decree entered on August 23, 1989. As a part of that decree, the defendant-appellee was granted visitation with his daughter which included alternate weekends, holidays, and extended vacation time.

Since the entry of the August 23, 1989, decree, the plaintiff-appellant has strongly objected to the visitation rights granted by the court. Substantial hostility exists between the parties. Regrettably Sarah, who at the time the decree was entered was but three years of age, has been present on a number of occasions when her parents displayed such hostility towards each other.

On November 19, 1992, the plaintiff-appellant filed a petition for modification of the visitation and child support provisions of the paternity decree. The court in its ruling of April 20, 1993, held that a substantial change of circumstances, warranting a modification of the visitation provision, did not exist. The court, however, did find a substantial change of circumstances concerning the earnings of the parties. The child support to be paid by the defendant-appellee was increased. The court also awarded the plaintiff-appellant $500 in attorney fees.

## I.

■ In this equity action, our review is de novo. Iowa R.App.P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them. Iowa R.App.P. 14(f)(7).

■ We agree with the plaintiff-appellant that the mention by the trial court that the plaintiff must prove a substantial change in circumstances since the entry of the original decree to justify a change in visitation is an improper standard of proof. The appellate courts of this state have consistently held that to justify a modification of visitation rights, the plaintiff must show there has been a change of circumstances since the filing of the decree. *In re Marriage of Jerome*, 378 N.W.2d 302, 305 (Iowa App.1985).

The burden upon the petitioner in a modification of visitation rights differs from the burden upon him or her in a modification of custody. *Id.* The degree of change required in a modification of visitation rights is much less than the change required in a modification for custody. *Id.* "[A]s to modification of visitation rights as compared to child custody changes, the general rule is that a much less extensive change of circumstances need be shown in visitation right cases." *Donovan v. Donovan*, 212 N.W.2d 451, 453 (Iowa 1973) (citing *Remsburg v. Remsburg*, 180 N.W.2d 461, 463 (Iowa 1970); *Smith v. Smith*, 258 Iowa 1315, 1317, 142 N.W.2d 421, 422 (1966)). Our focus should always be on the best interest of the child. *See* Iowa Code § 598.41 (1991).

## II.

■ There is not much question that the plaintiff-appellant has strenuously objected to the defendant-appellee exercising any visitation with his child. Sarah's parents had been good friends and working colleagues for years. This pleasant relationship deteriorated when an attempt was made to settle the paternity dispute prior to that hearing. In January, prior to the paternity hearing, the defendant-appellee was taking care of Sarah and, as described by him, he "was taking care of Sarah Rose one day, and the next day I couldn't see her."

The trial court, after hearing all of the evidence and observing the conduct and demeanor of the witnesses, made the following finding:

It is clear from the record that the Plaintiff strongly objected to the extent of the visitation awarded to the Defendant and successfully attempted to block and obstruct the Defendant in the exercising of his visitation rights. The Plaintiff's attitude towards the Defendant is demonstrat-

ed by her not naming him as the father on admission application for the child at [daycare] centers and in her leaving explicit instructions at such centers that the Defendant was to have no contact with his daughter. The Court agrees with the testimony of Dr. Dawdy, who counseled Sarah Rose during 1992, that the child would have tried to override some of her negative feelings towards her father, but that she could not easily do so because of the nonverbal messages from her mother.

At least two contempt actions were brought by the defendant-appellee. In each application, the defendant-appellee sought to have the plaintiff-appellant held in contempt for her failure to comply with the decree as it relates to visitation.

The first application was filed in January 1992. The contempt action proceeded to hearing and the trial judge ruled from the bench on March 18, 1992. The plaintiff-appellant is correct when she asserts that the court did not find her in contempt. However, the trial court made a number of observations which we set forth.

The trial judge admonished the plaintiff-appellant that the visitation order set forth in the paternity decree was more than some goal to be obtained in the future. It was an order that was to take effect immediately. The judge stated:

> The Court concludes that the plaintiff, or the plaintiff in this case, Florence, is in default of her obligations under the visitation provisions of this decree. The Court is not prepared at this time to exercise its contempt powers. The Court is not prepared at this time to find the plaintiff, Florence, has engaged in any willful or intentional violation of the decree to the extent she should be held in contempt, but she should be sent a message that this is the Court's order whether you like it or not, whether you agree with it or not, it's the way it's going to be and it will be enforced.

The court explained it was not holding Florence in contempt because of the impression that it had of Frank:

> that he is overbearing, that he's unreasonable, that he is ignoring professional advice that states that his approach is going to hurt his child because he disagrees with it and doesn't like what he's hearing, just like Florence doesn't like this court order, he is going to go ahead.

The court concluded that the parties should engage in custody and visitation mediation counseling.

From our de novo review of the record, it is clear the dispute as to the rights of the defendant-appellee to visit with his child continued after the first contempt hearing. As a result, the defendant-appellee again sought relief through the courts. He captioned his new motion as a "Further Hearing Regarding Contempt." The court declined to take jurisdiction, finding essentially that there had been a determination of the contempt issue in the previous hearing, and that the court was without jurisdiction to revisit the matter without a subsequent rule to show cause. Although the court declined to take jurisdiction, it once again expressed its concern as to the conduct of the parties relating to the defendant-appellee's visitation rights with his daughter.

As noted earlier, counseling was recommended and did take place with Dr. Dawdy. There is strong evidence in the record that the only opportunity the defendant-appellee was afforded to visit with Sarah was during these counseling sessions. The modification court agreed with the testimony of Dr. Dawdy, who counseled Sarah during 1992, "that the child would have tried to override some of her negative feelings towards her father, but that she could not easily do so because of the nonverbal messages from her mother." The modification court further found that any fear held by Sarah towards her father was placed there by the actions of the plaintiff.

The plaintiff-appellant directs to our attention an incident that occurred on June 7, 1992, at St. Luke's Episcopal Church when the defendant-appellee attempted to exercise visitation with Sarah. The plaintiff-appellant testified that Sarah was hysterical and kept saying things like "he is going to kill me." She described the incident as being horrible.

Sarah was kicking and screaming and ran away from both her mother and father. Her father caught her and put her into his car. The defendant-appellee admitted that Sarah did object to going with him and that she would say "I am not going" and that she would kick and scream and cry, but he further testified that once he got into the car and started the car and started down the street, she was just fine. He described her as "just like a totally different kid" and that the visits would go smoothly.

According to the record, the incident at the Episcopal church occurred on a Tuesday. On the following Sunday, the defendant-appellee again came to exercise his visitation right. Once again, he tried to persuade Sarah to go with him. She kicked and yelled and screamed and, according to the plaintiff-appellant, said "I am not going to do this." A ruckus took place with Sarah clinging to her mother, screaming all the time, and her father grabbing a hold of her. Sarah complained that her father had pinched her and it hurt her. Sarah did not go with her father.

Pictures were taken which reflected bruises on Sarah's back. A complaint was filed. A child abuse notification was prepared and investigated and it was determined that the report of physical abuse by the defendant-appellee was founded.

We readily admit that child abuse is harmful to a child. The plaintiff-appellant cites us to *In re Marriage of Burwinkel*, 426 N.W.2d 664, 665 (Iowa App.1988), as authority for modifying visitation privileges where a father has used excessive force on a child. We believe the facts in *Burwinkel* are readily distinguishable from the facts in the case at bar. We concluded in *Burwinkel* that the father's visitation rights should be temporarily restricted to supervised visitation while the father continued to receive services to improve his parenting skills. *Id.* Here, however, although we do not condone the father's acts, the child is the person in dire and immediate need of professional assistance.

There is not much question that the hostility between the parents has had a detrimental effect on Sarah. For instance, while in Dr.

Dawdy's office for counseling, Sarah was informed that her paternal grandfather was killed in a car wreck. When she was presented with a photograph of her grandfather, she took it from her father, but then, "shoved it back at me [defendant-appellee]." According to the record Sarah said:

'No, I can't keep that. Mama won't let me keep that.' and then she—she got really irate and she started in yelling and screaming at me and yelling and screaming at Dr. Dawdy. She said, 'Grandpa is in hell. Grandpa did all these terrible things to Mom and Dad—or to my mom and me.' She says doctor—she said to Dr. Dawdy, 'We don't like you anymore because you like him.'—she was pointing at me—'best.'

She was just totally uncontrollable and finally Dr. Dawdy escorted her out himself.

Sarah attended the Boulevard Children's Center for approximately one year. Exhibit 8 is a letter from Boulevard to plaintiff-appellant dated June 21, 1991. That letter contains the following:

From the onset, Sarah Rose has exhibited behaviors that were problematic, behaviors that have basically continued unchanged to this day. These include physical acts of aggression (kicking, biting, hitting) toward other children and staff, self-inflicted harm (repeated, purposeful hitting her head against the wall), destruction of property, disruptive and antisocial behavior, and so on. Our records indicate that you have been made aware, on numerous occasions, of the various incidents that have taken place at the center relative to her behavior.

The Boulevard letter continued that in their opinion the environment offered by the center was not one appropriate for Sarah, nor was it one that can offer her the individualized attention demanded by her behavior.

### III.

■ We recognize, as urged by the plaintiff-appellant, that we must concern ourself with whether there has been a change in circumstances to warrant modifying the visitation rights granted under the paternity decree. However, decisions like the contro-

versy before us cannot be resolved in a vacuum. All relevant facts must be taken into consideration. We feel obliged to consider the conduct of the parents towards each other and their child and the interaction between the child and her parents to the extent it sheds light on the issue of change in circumstances.

To some extent the result of this case is dependent upon the credibility of witnesses. Although we are not bound by the fact findings of the trial court as explained earlier, we do give them weight especially when considering the credibility of witnesses. It occurs to us that the trial judge in almost all instances found the defendant-appellee's testimony more credible than others.

■ Like the trial court, we are especially concerned as to the conduct of Sarah toward her father. It is this conduct, for the most part, that the plaintiff-appellant relies on in seeking modification. As to that conduct, the trial court stated:

The Court feels that any fear held by Sarah Rose towards her father was placed there by the actions of the Plaintiff. The Plaintiff now comes into Court and asks that because of this fear, that the Defendant's access to the parties' child should be restricted. The court recognizes that a custodial parent has the power to instill anxieties in a child toward the noncustodial parent. To allow the custodial parent to instill such anxieties and then to use that as justification to block visitation would open a Pandora's Box of abuse which no Court should tolerate.

The evidence offered in this hearing concerning the fears of the child and the dangers to her if visitation were granted were the same as that offered at the original hearing with the exception being that this evidence was supported by the testimony of Drs. Garfield and Dawdy. No evidence was offered to show that the relationship between the parties has changed. The Court cannot retry the issue of visitation but must find that there has been a substantial change in circumstances since the entry of the original order to justify a change in visitation. Based on the record

herein, the Plaintiff has failed to carry her burden in this regard.

We agree with the observations made by the trial court except for the use of the words "substantial change" in the third sentence of the second quoted paragraph. As explained earlier, all that is needed for modification of visitation rights is a change in circumstances. A substantial change is not necessary.

From our de novo review of the record, we find that the plaintiff has failed to carry her burden of proving a change in circumstances. As noted by the trial judge, many of the conditions relied on for modification existed at the time the paternity decree was entered.

■ We have reviewed the testimony of the experts produced by the plaintiff-appellant. Most certainly their testimony must be accorded weight, but their final conclusions are not binding on the trier of fact nor on the appellate courts. Notwithstanding the arguments of the plaintiff-appellant we find that in some instances the testimony of one of the experts is more helpful to the defendant-appellee than the plaintiff-appellant.

We do not doubt the love and affection each parent has for Sarah, however, rather than limit and discourage the visitation rights of her father, we are convinced under the circumstances here that those rights should be encouraged. We believe the plaintiff-appellant, as the custodial parent, is in the superior position to achieve this goal.

We have reviewed the plaintiff-appellant's assignment of error as it relates to the attorney fee award. We affirm the trial court also on this issue.

On appeal each party is to pay his/her own attorney fees and the costs of this action are assessed to the appellant.

**AFFIRMED.**

PETERSON, Senior Judge, and SACKETT, P.J., specially concur.

PETERSON, Senior Judge (specially concurring)

I concur with the majority. However, I would call this matter to the attention of the department of human services to determine

whether a petition should be filed in juvenile court alleging that Sarah Rose is a Child in Need of Assistance. *See Iowa Dep't of Social Serv. v. Blair,* 294 N.W.2d 567, 570 (Iowa 1980). The record is replete with situations created by the mother and father that have and will in the future have an extremely damaging effect on Sarah Rose.

SACKETT, P.J., joins this special concurrence.