# IN THE COURT OF APPEALS OF IOWA

No. 13-1874
Filed November 26, 2014

**Upon the Petition of**
**GERALD JOHN CHARTIER,**
      Petitioner-Appellee,

**And Concerning**
**AMANDA JOY PETERSON,**
**f/k/a AMANDA JOY JOHNSON,**
      Respondent-Appellant.
_____

      Appeal from the Iowa District Court for Woodbury County, Edward A. Jacobson, Judge.

      A mother appeals from the district court's order granting physical care of the minor child to the father. **AFFIRMED.**

      John Beauvais Jr. of Deck Law, L.L.P., Sioux City, for appellant.

      John Moeller, Sioux City, for appellee.

      Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

Amanda Peterson appeals the district court order granting physical care of the minor child, M.J., to the father, Gerald Chartier. Amanda contends the district court erred when it determined both parties have a history of domestic abuse. She also contends the district court failed to adequately consider the father's history of unstable housing and inconsistent employment. Upon our de novo review, we find Gerald is the parent who is "most likely to bring [M.J.] to health, both physically and mentally, and to social maturity." *See In re Marriage of Hansen*, 733 N.W.2d 683, 695-96 (Iowa 2007). We affirm the order of the district court.

**I. Background Facts and Proceedings.**

Amanda and Gerald lived together for approximately eight years before their relationship ended in January 2012. They were never married. M.J. was born in March 2005. She is Gerald's only child and Amanda's second child—her first lives with the father.

At the time of the custody hearing, Gerald was engaged to Jenelle Steele. He resided with Jenelle and her two children, ages four and eight. He worked approximately twenty-eight hours a week at Meineke Car Care and was attending college at Western Iowa Technical. He anticipated completing the program in April 2014. Jenelle was self-employed, working out of the couple's home, and also attending college, pursuing a degree in law enforcement.

Amanda had married in December 2012 and resided with her husband, David Peterson, and his twin children, who were eight years old. Amanda had

maintained the same job for approximately three years at the time of the hearing, working in a retail store at a local mall.

During the couple's relationship, both Gerald and Amanda were charged with domestic abuse assault twice. They were both ordered to take batterers' education classes and have since completed them. The most recent incident occurred on January 11, 2012, when Amanda came home late after drinking. Gerald contends it turned physical after he took Amanda's keys to prevent her from driving. Amanda claims Gerald punched her in the ribs multiple times. Gerald was arrested the next day for domestic abuse and wrongful imprisonment although he himself was hit in the ribs and twice in the groin by Amanda. He could not make bail and served ninety-eight days in jail before entering into a plea agreement. While Gerald was in jail, Amanda was charged with operating while intoxicated and later, convicted. She also became acquainted with David Peterson.

In June 2012, M.J. began having an ongoing issue with head lice. Although both parents attempted to treat the problem, it persisted off and on for over a year. In response to the problem, Amanda shaved M.J.'s head, leaving her with just bangs. She then dyed M.J.'s remaining hair purple. At the hearing, Amanda was asked if she believed it affected M.J. to have her head shaved. She responded:

> Oh, I think it affected her to shave her head. I mean, she's very—
> she's very punky, so I don't think it hurts her as much as it would
> another kid, but she's a girl and she has a shaved head. I mean,
> no eight-year-old wants her head shaved.

Amanda also admitted that her now-husband, David Peterson, teased M.J., calling her "lice girl." M.J. was also teased at school and a teacher thought her hair was inappropriate.

In November 2012, David Peterson was arrested for domestic abuse assault upon Amanda. At the time she made the complaint, Amanda stated David had slapped her across the face, pushed her down, and strangled her neck with his hands. A no contact order was issued between David and Amanda, but was lifted the next day at Amanda's request. Subsequently, the county attorney filed a motion to dismiss the charges, stating Amanda was uncooperative and a case could not be made against David without her testimony. At the custody hearing, Amanda testified she did not cooperate because she had lied about the initial complaint. She stated she lied about the abuse because "[w]e had argued the whole night before and into that morning. I was very upset. I wanted things to end."

At the hearing, Amanda admitted she had not yet completed the Children Coping with Divorce class although the court had ordered both parties to do so over a year earlier.[1]

Following the hearing, the court issued a written ruling granting Gerald physical care of M.J. and awarding Amanda liberal visitation. Amanda appeals.

---

[1] The court ordered both parties to take the class on August 2, 2012. Gerald completed the class on September 8, 2012. On September 19, 2013, after the custody hearing but before the written ruling was filed, Amanda filed the certificate showing she had completed the class as well.

*II. Standard of Review.*

We review custody decisions de novo. *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005). We give weight to the district court's findings, especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Precedent is of little value as our determination must depend on the facts of the particular case." *In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995).

**III. Discussion.**

**A. Physical Care.**

The criteria governing custody decisions are the same whether the parents are dissolving their marriage or are unwed. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). The controlling consideration is the best interest of the child. Iowa R. App. P. 6.904(3)(o). As in this case, where neither party requests joint physical care, we use the factors enumerated in Iowa Code section 598.41(3) (2013) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), to determine which of the two parents is most likely to provide an environment that brings the child to health, both physically and mentally, and to social maturity. *See Hansen*, 733 N.W.2d at 695–96. In making our determination, gender is irrelevant and neither parent has a "greater burden than the other in attempting to gain custody. . . ." *In re Marriage of Bowen,* 219 N.W.2d 683, 689 (Iowa 1974).

Amanda contends the district court erred when it determined both parties have a history of domestic abuse.[2]  She maintains that Gerald is the only one with a history of domestic abuse and thus should not be awarded physical care of M.J.

As our supreme court stated in *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997):

> In interpreting what is sufficient to constitute a "history of domestic abuse," we find that a "history" is not necessarily established by a single documented incident. . . .  Nor does more than one minor incident automatically establish a "history of domestic abuse."  It is for the court to weigh the evidence of domestic abuse, its nature, severity, repetition, and to whom directed, not just to be a counter of numbers.

(Internal citations omitted).  As the district court concluded, we believe the record reflects that the abuse was inflicted and received by both parties.  Significantly, neither party contends the other has ever physically abused M.J. and both parents have completed batterers' education programs.  We conclude neither parent is entitled to a presumption related to physical care.

---

[2] As we understand it, Amanda's arguments regarding the court's finding of a "history of domestic abuse" is twofold.  Regarding her statutory argument—Amanda cites Iowa Code sections 598.41(1)(b), (c), and (d) for the proposition that she should be awarded physical care of M.J.  These sections technically deal with legal custody rather than physical care.  Section 598.41(1)(b) provides a rebuttable presumption against awarding joint custody when a history of domestic abuse exists.  However, neither Amanda nor Gerald requested sole legal custody of M.J. at the custody hearing, and, as such, any issue related to "custody" has been waived.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.")  Additionally, the district court did not award Gerald physical care because Amanda relocated with M.J. or stopped Gerald from visiting M.J.  *See* Iowa Code §§ 598.41(1)(b) & (c) (prohibiting the court from denying custody to a parent for the denial of the opportunity for maximum continuing contact or for relocating with the child when a history of domestic abuse exists).

Amanda also contends the district court failed to give adequate consideration to Gerald's history of unstable housing and inconsistent employment when granting him physical care of M.J. We acknowledge that Gerald has moved frequently in the past and has had less stable employment than Amanda. But we believe Gerald has stabilized his life and is the parent who is "most likely to bring [M.J.] to health, both physically and mentally, and to social maturity." *See Hansen*, 733 N.W.2d at 695–96. As Amanda testified, "[When M.J.'s with her dad], I know she gets fed. I know she's not abused. And I know she enjoys time with her dad." Amanda admitted both she and her new husband have said derogatory things about Gerald in front of M.J. and her husband called M.J. "lice girl." *See In re Marriage of Decker*, 666 N.W.2d 175, 179 (Iowa Ct. App. 2003) ("[I]f a parent seeks to establish a home with another adult, that adult's background and his or her relationship becomes a significant factor in a custody dispute."); *see also Nicolou v. Clements*, 516 N.W.2d 905, 909 (Iowa Ct. App. 1994) ("The court recognizes that a custodial parent has the power to instill anxieties in a child toward the noncustodial parent."). Amanda also has a recent operating while intoxicated conviction and used poor judgment in shaving M.J.'s head and dying her remaining bangs purple when Amanda was aware that it was likely to have a negative effect on her daughter.

We affirm the district court's award of physical care to Gerald.

**B. Attorney Fees.**

Amanda seeks an award of appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in the appellate court's discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider the

needs of the party seeking an award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* In a custody proceeding between parents who have never married, the court may award the prevailing party reasonable attorney fees. Iowa Code § 600B.26. We decline to award appellate attorney fees.

**IV. Conclusion.**

We affirm the award of physical care to Gerald. We decline to award Amanda appellate attorney fees. Costs on appeal are assessed to Amanda.

**AFFIRMED.**