**IN THE COURT OF APPEALS OF IOWA**

No. 15-1417
Filed April 6, 2016


IN RE THE MARRIAGE OF KERRI KATHLEEN HANSEN
AND ROBERT JAMES HANSEN

Upon the Petition of
KERRI KATHLEEN HANSEN, n/k/a KERRI KATHLEEN HOUSH,
        Petitioner-Appellant,

And Concerning
ROBERT JAMES HANSEN,
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.


        A mother appeals a modification decree granting physical care of the

parents' two children to the father.  **AFFIRMED.**


        Ryan R. Gravett of Oliver Gravett Law Firm, P.C., Windsor Heights, for

appellant.

        Elizabeth A. Kellner-Nelson of Kellner-Nelson Law Firm, P.C., West Des

Moines, for appellee.


        Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals a modification decree granting physical care of the parents' two children to the father.

## I. Background Facts and Proceedings

Kerri Housh and Robert Hansen divorced in 2010. The district court granted the parents joint physical care of their two children, born in 2005 and 2006.

During the marriage, the family lived in Granger, Iowa. After the divorce, Housh remarried and moved to Centerville and then to Seymour, Iowa. Seymour is a two-hour drive from Granger.

Housh applied to modify the joint physical care provision of the dissolution decree. She requested physical care of the children. Hansen countered with his own request for physical care. A court-appointed custody evaluator recommended Housh as the physical caretaker. After a lengthy hearing, the district court declined to adopt the custody evaluator's recommendation and granted Hansen physical care. Housh appealed.

## II. Modification of Physical Care

A parent seeking a modification of a decree's physical care provision must establish a material and substantial change of circumstances. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *see also In re Marriage of Harris*, ___ N.W.2d __, ___ (Iowa 2016). Where parents have exercised joint physical care of the children, both have been found to be suitable primary care parents. *See Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa Ct. App. 2002). If it is determined the joint physical care arrangement must be modified, "[t]he parent

who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives is chosen as primary physical care giver." *In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998).

The parents agree Housh's move constituted a material and substantial change of circumstances. Their dispute focuses on which parent would better serve the children's long-term best interests. Housh contends she is the superior parent. She cites (1) Hansen's "drinking," (2) Hansen's "undercutting" of her parenting role, (3) her "ongoing connection with extended family," and (4) "the wishes of the children."

The district court found Hansen's alcohol consumption did not render Housh the superior caretaker. The court stated there was "no indication . . . Housh ever even broached that topic with Mr. Hansen," the court was "confident" the topic would have been broached "if it was a significant concern which impacted the safety of the children," and there was insufficient evidence to indicate Hansen's consumption of beer "impair[ed] [his] ability to care for his children." On our de novo review, we find evidentiary support for these findings.

Hansen discussed his level of alcohol consumption with the custody evaluator. After conducting a personality test, the evaluator opined the results "did not point to a proclivity for alcohol problems." She acknowledged it was "not possible to entirely understand the effect of [Hansen's] alcohol consumption on the children," and Hansen would "need to be careful to monitor this so that alcohol use [did] not create an emotional distance" with the children. At the same time, she noted Hansen's willingness to "cease all alcohol use if this was a

source of concern for the children." Significantly, the evaluator criticized Housh for referring to Hansen as a "functioning alcoholic" during an interview in the children's presence. She testified about "the concern . . . if she makes those comments in front of the children . . . that could shed some light on how they may feel about him." We conclude Hansen's alcohol consumption was not a basis for finding Housh the superior caretaker.

We turn to whether Hansen undercut Housh's role with the children. We agree with the district court that, for the most part, the parents engaged in "civil exchanges." While there were times when each failed to communicate effectively with the other, Housh agreed she never would have sought a modification of the joint physical care arrangement had she not moved. In short, the parents communicated well enough to make joint physical care work for several years and well enough to continue a joint physical care arrangement had distance not precluded it. Neither parent significantly undercut the relationship of the other.

Housh next points to the "ongoing connection with extended family" and argues she was the parent better able to foster this connection. Hansen conceded he was estranged from one of his sisters. To her credit, Housh facilitated contact between the children and this sister. But she was not as willing to encourage the children's relationship with Hansen's new wife and child. The district court saw this incongruity. The court expressed hope Hansen would repair his relationship with his sister and advised Housh to view Hansen's new family as a unit. The advice comported with the custody evaluator's insights. We conclude this factor did not favor either parent.

We are left with Housh's assertion that the district court "failed to consider and/or give proper weight to the wishes of the children." The preferences of the children, while not controlling, are relevant. *See McKee v. Dicus*, 785 N.W.2d 733, 785 (Iowa Ct. App. 2010). They are given less weight in a modification action than in an original custody proceeding. *In re Marriage of Hoffman*, 867 N.W.2d 26, 34 (Iowa 2015). These preferences do not militate in favor of a different physical care determination.

The children were only nine and ten at the time of the modification hearing. While the custody evaluator reported their desire to live with their mother and cited their emotional attachment to her as a basis for the physical care recommendation, the evaluator's testimony at the modification hearing was more equivocal. She stated the children "like[d] having both of their pa[rents] living in the same community," "like[d] having the opportunity to spend time with both of them," and the physical care decision was like "splitting hairs."

The district court acknowledged the children's angst. The court stated:

These children want to make everybody happy. They do not want to see either their mom or dad sad or unhappy about the situation.
. . . .
Unfortunately, I can't keep the 50/50 situation because it just will not work for these kids. The children clearly have mixed feelings about it. They expressed that to [the custody evaluator]. They expressed they prefer to live with their mom but they have mixed feelings about moving as well. They are very emotionally connected to their mother.

Ultimately, the court found it "tragic" that the family could not continue under a joint physical care arrangement, noted the children would "thrive in the primary physical care of either" parent, but found "continuing [the children] in their current school system and in a home that they are more familiar with at this time is

important," subject to "generous visitation" with Housh. We agree with this decision.

### III. Child Evaluator's Report

Housh contends the district court "failed to give the proper weight to the report of the custody evaluator." Expert testimony "[m]ost certainly . . . must be accorded weight, but [the] final conclusions are not binding on the trier of fact nor on the appellate courts." *Nicolou v. Clements*, 516 N.W.2d 905, 909 (Iowa Ct. App. 1994).

The district court considered the evaluator "credible" and praised her expertise. However, the court determined she was not "privy to additional information" available to the court, largely because Housh declined to present this information in hopes of placing herself in a better light. The court found Hansen's testimony more credible than Housh's.

The district court's weighing of witness credibility was exclusively within its purview. *See In re Marriage of Maynes*, No. 13-1156, 2014 WL 6680858, at *1 (Iowa Ct. App. Nov. 26, 2014) (citing the court's "ability to see and hear witnesses firsthand"). We give weight to those credibility findings. *See Hoffman*, 867 N.W.2d at 32. After observing the witnesses, the court chose to go in a different direction than the evaluator recommended. Because the court's ruling finds support in the record, we affirm the decision granting Hansen physical care of the children.

### IV. *Appellate Attorney Fees*

Hansen seeks $3000 in appellate attorney fees. An award is discretionary. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We grant the request and order Housh to pay $1500 to Hansen. Costs of this matter are assessed to Housh.

**AFFIRMED.**