# N THE COURT OF APPEALS OF IOWA

No. 17-1551
Filed October 10, 2018

**BIANCA BRASHEAR,**
        Plaintiff-Appellee/Cross-Appellant,

**vs.**

**SETH ALDINI,**
        Defendant-Appellant/Cross-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.


Seth Aldini appeals and Bianca Brashear cross-appeals from the order modifying the custody and support decree. **AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON CROSS-APPEAL; AND REMANDED WITH DIRECTIONS.**


Lynn C.H. Poschner (until withdrawal) and Eric Borseth of Borseth Law Office, Altoona, for appellant.

Lynne Wallin Hines of Lynne W. Hines Law Office, Des Moines, for appellee.


Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

Seth Aldini appeals and Bianca Brashear cross-appeals from the order modifying their custody and support decree. We affirm as modified on appeal, and affirm in part and reverse in part on cross-appeal.

**I. Background Facts and Proceedings.**

Bianca and Seth have never been married and are the parents of M.B., born in October 2009. A decree establishing paternity, custody, visitation, and support was entered on September 20, 2010. Pursuant to the decree, Bianca and Seth were granted joint legal custody, and Bianca was granted physical care. Seth was ordered to pay child support of $541 per month based on his income of $40,024 and Bianca's income of $19,362. The decree provided Seth was to have "reasonable visitation as agreed upon by the parties." In the event they could not agree, a graduated parenting schedule provided that until the child was eighteen months of age, Seth had parenting time every other Saturday from 9:00 a.m. to 12:00 p.m.. Then, until the child was three years of age Seth's parenting time was every other Saturday from 9:00 a.m. to 5:00 p.m. From age three to three and a half, Seth had parenting time with M.B. every other Saturday from 9:00 a.m. until Sunday at 6:00 p.m. and every Wednesday from 4:00 p.m. to 7:00 p.m. Thereafter,

> D. Commencing at three and a half (3 1/2) years of age: Every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. and every Wednesday from 4:00 p.m. until 7:00 p.m. If the child is involved in any activities, then Seth agrees to either take the child to the activity or he will switch his weekly visitation day to another weekday.
> E. The parties shall alternate holidays pursuant to Exhibit A
> . . . .
> F. When [M.B.] turns three (3) years of age, both parties shall receive two (2) weeks of non-consecutive visitation per year. The week selected shall include his/her regularly scheduled parenting

time. The parties shall provide at least thirty (30) days' written notice of the date he/she is requesting. Bianca shall receive first choice of the weekly visitation in odd-numbered years and Seth shall receive first choice of the weekly visitation in even-numbered years. When [M.B.] commences kindergarten, the two-week visitation shall be during the summer break.

On August 18, 2016, Bianca filed an application to modify child support. On December 4, 2016, Seth answered and counter-claimed for a change of physical care, or in the alternative, an amended visitation schedule. Trial was held on May 10 and 11, and August 30, 2017.

At the time of trial, Bianca was thirty-two years old. M.B. is her only child. Bianca and M.B. reside at Bianca's mother's home as they have since before the 2010 decree. Bianca's boyfriend also sometimes resides with her at her mother's residence but had moved out by the August trial date. M.B. was in second grade in public school. M.B. has no educational or developmental concerns and is active in dance classes and competition.

Bianca was employed part time as a server and bartender. She has a bachelor's degree, which she earned from Iowa State University in 2013, with a major in family and consumer sciences. Her tax returns reflect earnings of $13,695 in 2014; $18,049 in 2015; and $25,400 in 2016. Bianca changed employers during the trial, and as of the August trial date, Bianca was working twenty-eight hours per week and she was paid $8.35 per hour, plus tips. However, she testified she intended to work as close as possible to forty hours per week once the litigation was finished. The most Bianca has earned was at an unspecified time when she worked for Casey's in an office position earning $30,000 annually.

Seth was thirty-four years old and married to Lindsay. Seth and Lindsay have two children, a seven-year-old and a five-year-old. Lindsay and Bianca have a long history of animosity toward one another. Seth is employed full-time as a software engineer with the same employer as before the 2010 decree. He now earns $77,000 per year. As required by the original decree, Seth provides health insurance for M.B.

The court found Bianca's employment had changed, her education had changed, Seth's income had changed, and Seth now had an additional dependent. The court concluded a substantial change of circumstances existed requiring a modification of Seth's child support obligation. It determined Bianca was "intentionally underemployed" and imputed income of $35,000 to her. Seth was ordered to pay $685 per month for child support for M.B. The court determined Seth had failed to prove a change of custody or visitation was warranted.

Seth appeals and Bianca cross-appeals.

## II. Scope and Standard of Review.

We review proceedings to modify custodial provisions de novo. Iowa R. App. P. 6.907; *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa 2002). "[W]e give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them." *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). "Our overriding consideration is the best interests of the child." *Id.*

## III. Discussion.

*A. Seth's Appeal.* Seth argues the court should have modified the visitation schedule because Bianca has denied him visitation beyond that specified in the

decree. Seth requests that he be allowed visitation three weekends per month during the school year from Friday at school dismissal until Monday morning (and the same would be allowed during summer for Bianca). Seth states that if this change is made, he is willing to give up the midweek visitation. We observe, though, that Seth has not always exercised his Wednesday visitation fully because it interferes with his other children's schedules.

Visitation provisions in custody decrees are meant to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." *See* Iowa Code § 600B.40 (2016) (providing that visitation is to be determined by applying section 598.41).[1] Liberal visitation is generally in the best interests of children. *In re Marriage of Riddle*, 500 N.W.2d 718, 720 (Iowa Ct. App. 1993). The parties' original decree incorporated the provision of liberal visitation, providing for specific terms only if the parties could not agree otherwise.

Bianca's strict adherence to the specific terms of the custody decree has not provided Seth with maximum time with M.B. While she has not violated the specific visitation terms of the decree, we encourage every parent to recognize that court orders and decrees fixing visitation terms cannot predict or identify every important life event, and it is important that parents be flexible in changing visitation

---

[1] Section 598.41(1)(a) provides:
> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award, including liberal visitation rights where appropriate, which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents after the parents have separated or dissolved the marriage, and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child, other children, or a parent is likely to result from such contact with one parent.

or care arrangements so the child can attend important life events. M.B. has already missed a family Christmas and a college graduation. She also missed a vacation with Seth's family and, instead, spent time in daycare. A lack of flexibility will cause her to miss more important life events.

"To justify a modification of visitation rights, the [petitioner] must show there has been a change of circumstances since the filing of the decree." *Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994). The burden of showing a change required to modify visitation rights is much less than the change required to modify custody. *Id.* As always, the best interests of the child is our main concern. *Id.*

Upon our de novo review, we disagree with Bianca and the district court that because there were communication problems and a lack of cooperation when the decree was entered, and these difficulties continued, the communication problems and lack of cooperation cannot serve as a change in circumstances. To the contrary, we expect those difficulties to subside once the parties have resolved their initial dispute. We caution that continued communication problems and lack of cooperation have served as a basis to modify custody. *See In re Marriage of Harris*, 877 N.W.2d 434, 441 (Iowa 2016), and cases cited therein. We conclude the communication problems, lack of cooperation, and lack of flexibility with regard to visitation show a change of circumstances not contemplated by the decretal court.

We determine Seth should be granted visitation every other weekend beginning Friday at school dismissal until Monday morning when school begins or

at 9:00 a.m. if there is no school.[2] Wednesday evening visits have been disrupted by M.B.'s extracurricular activities as well as Seth's employment obligations. Eliminating midweek visits will provide fewer disruptions in the various schedules involved, and one less opportunity for disagreements to arise. It will allow for M.B.'s weekend time with Seth to be continuous and will allow Seth's participation in readying M.B. for school the next day. We conclude the difficulties encountered on Wednesday night visitations and the continued communication difficulties satisfy the burden of proof to modify these visitation terms. Although not required, we suggest Bianca allow Seth a one- to three-hour period with M.B. sometime between his weekends when there are no scheduling conflicts.

Additionally, we modify the visitation terms to grant visitation on the child's birthday as well as the holiday visitation schedule as provided in Seth's parenting plan—with one exception. We believe the parties should alternate spring break. Thus, Bianca shall provide M.B.'s care during spring break in even years, and Seth shall have such visitation in odd years. The holidays and M.B.'s birthday have been a source of conflict for the parties, and there is no reason to deny this additional time to Seth. We do not modify other aspects of the parenting schedule but encourage the parties to be flexible—with respect to both the day and time— as to when the child is to be exchanged and to favor the child being in the care of a parent rather than daycare when those opportunities arise.

Bianca, Seth, and Lindsay all testified they had acted inappropriately in the past and could have handled situations differently. It is in M.B.'s best interests to

---

[2] We acknowledge Seth requested three such weekends a month but conclude that arrangement too severely restricts Bianca's time with the child on weekends.

have the maximum contact with both parents. It is also in M.B.'s best interests that the parties work together to successfully parent M.B., including freely sharing medical-care and educational information, communicating respectfully, and promoting a relationship with all family members. Seth's name should be identified on every important form for school, daycare, church and extra-curricular activities.

We stress that the parents of a child are duty bound to always act and consider the child's best interests, but a child's upbringing extends beyond a parent. There is an old proverb that "it takes a village to raise a child." The "village" includes other family members. The use of social media to disparage either parent or other family members is divisive and contrary to a child's best interests. A failure of a parent to discontinue their divisive misuse of social media may support modification of custody or visitation rights in the future. Although our jurisdiction only extends over the parties, if a parent exposes their child to a "village" that is detrimental to a child's best interests in any fashion, including the misuse of social media, it too can affect the parent's custody and visitation rights.

Both parties to this action must give consideration to the best interests of the child in their efforts to co-parent their child. They have both performed poorly in consulting with each other and have yet to develop a working relationship to parent their child without constant minor disagreements. Disengaging their emotions and avoiding blaming the other can improve communications. Parents do not have to like each other to show respect to the other or to foster a "working relationship" with each other centered upon the child's best interests. If the current conduct continues, someday the child may ask, "Mom why can't I attend Dad's Christmas?" or, "Dad, can you explain this Facebook post to me?" If the parties

improve their communications, then some day in the future the child will likely express appreciation for her parents' efforts to work collaboratively for her interests.

*B. Bianca's Cross-appeal.*

*1. Imputed income.* On cross-appeal, Bianca maintains there is no support for the amount of income the court imputed to her. She requests child support be recalculated and ordered retroactive and an award of appellate attorney fees.

Bianca does not dispute income should be imputed to her as she plans to increase her working hours, but she disputes the amount determined by the district court in the sum of $35,000. Bianca's 2016 tax return reflects an income of $25,400. She asserts the child-support calculations should be modified to reflect an income for her of $27,768 ($8.35 an hour for a forty-hour week and adding $200 a week in tips). Yet, Bianca testified she made $200 per week in tips working twenty-eight hours. It is unreasonable to assume she would make that same amount of tips from her chosen profession—as Bianca testifies is "an industry in which I excelled"—working twelve additional hours per week.

While we may not characterize Bianca as "intentionally underemployed," we agree that a twenty-eight hour week has been a voluntary schedule. Bianca states she can and plans to work a forty-hour week. Assuming a forty-hour week at $8.35 plus tips comparable to her current tip earnings would result in an annual income of $35,169.[3] The district court imputed an income of $35,000 to Bianca "to provide for the needs of the child in each home and to do justice between the parties." We

---

[3] $24,618 x 1.4286 [40 divided by 28] = $35,169

assume the district court gave a small leeway to Bianca because her tips may not be extrapolated based upon the hours she works. Upon our review, we find no reason to disturb the district court's imputation of income to Bianca.

However, we see no reason why the increase in child support should not be retroactive,[4] and on remand, the decree shall provide for retroactive application of the new support amount effective March 1, 2017—three months after the date of service.[5] *See* Iowa Code § 598.21C(5). Upon remand, the district court shall enter an order for a periodic payment plan and an amended withholding order. *Id.* §§ 598.21C(5), .22.

*2. Trial attorney fees.* We review the district court's decision with respect to trial attorney fees for an abuse of discretion. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). Iowa Code section 600B.26 provides, "In a proceeding to . . . modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees." "[W]e give the district court considerable discretion in determining whether it should award attorney fees at the district court level." *Id.* at 639. We discern no abuse of discretion and affirm the district court's decision to not award trial attorney fees.

*3. Medical bills.* Bianca also contends the trial court should have ordered Seth to pay "all outstanding medical bills" he has refused to pay. Seth contends Bianca's claim in this respect has not been preserved for review. We agree.

---

[4] One reason to deny retroactivity could be that the payor only recently increased his income. However, Seth earned in excess of $70,000 in gross income for the year 2016 and in excess of $66,000 in 2015.

[5] The application for modification was filed on August 18, 2016, and the return of service reflects service was completed on November 16, 2016.

The district court ruled from the bench and made no mention of outstanding medical expenses. The court then asked counsel, "Is there anything that the court left out?" Counsel for Bianca stated, "I am assuming then that your ruling would be no to retroactive child support, no to attorney fees, and no—I'm assuming the parental coordination they are going to split 50/50." In her reply brief, Bianca asserts:

> The record supports a conclusion that this issue was tried by implied consent. Exhibit O was prepared by Seth and admitted at trial. Seth actually outlined why he did not pay the bills. Seth made no objection to any of this testimony at the time of trial. This issue was litigated and preserved on the record.
> Bianca is requesting that the court rule as to whether the Decree of Paternity language forfeited her claim to contribution. She is also asking for a ruling as well as to whether Seth is obligated to contribute for bills for out of network providers and for the bill for Dr. Pottebaum. Seth testified that he disputed the Dr. Pottebaum bill because he was not in agreement that M.B. should see her.

With respect to the first paragraph, the question before us is not whether the matter was tried by consent but whether the issue is properly preserved for our review.[6] "It is a fundamental doctrine of appellate review that issues must ordinarily

---

[6] Bianca lists thirteen outstanding bills in her brief and references Exhibit O, which is a list of the child's medical expenses between 2010 and 2017 prepared by Seth and that states whether payment was made and if no payment was made for what reason. At trial, Seth testified he did not pay these amounts because they were from providers not included in his insurance network or because he did not agree with the medical treatment or because he had not received a bill within thirty days.
The decree states:
> [Seth] shall provide medical insurance for [the child] so long as said insurance is available to him at a reasonable cost through his employment. Bianca shall pay the first $250.00 per calendar year for the child for *the cost of all reasonable and necessary uncovered medical expenses* (as defined by the Iowa Child Support Guidelines) including medical, hospital, dental/orthodontia, physical therapy, eye care including eye glasses and contact lenses, mental health treatment, substance abuse treatment, prescription drugs, and any other medical expense of the child which is not paid for by the abovementioned medical and hospital insurance or plan. The parties *shall share in the uncovered medical expenses* in excess of

be both raised *and decided* by the district court before we will decide them on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (emphasis added). Here, the only reference by the district court in its ruling is the statement, "other requests for financial payment for medical costs and/or parenting coordinator costs are denied." As for the second paragraph, Bianca did not ask the district court to interpret the language of the decree, but we acknowledge the district court did not explain how it concluded the request for medical costs should be denied, so we will consider the issue to the extent necessary.

We have reviewed Exhibits O and 13 and the testimony related to the medical bills. We first note Bianca did not testify to any amount certain that she sought as reimbursement. The paternity decree required Seth to maintain health insurance on M.B., Bianca to pay the first $250 of uncovered medical expenses, and the balance was to be paid in the following proportions: Seth, seventy-five percent, and Bianca, twenty-five percent. According to the decree, "uncovered

---

$250.00 for the child in proportion to their respective incomes which currently will have Bianca paying 25% and Seth 75% of those uncovered medical expenses.

Within thirty (30) days of receipt of an uninsured debt, the party receiving said uninsured debt shall be responsible to forward said documentation to the other party. Within thirty (30) days after receipt of said documentation, that party shall be responsible to reimburse the other party or the health care provider his or her respective share of the uninsured health care debt. Both parties shall cooperate fully concerning the exchange of insurance forms, information, and cards regarding the child. The parties shall provide each other with copies of duplicate insurance cards.

Seth shall sign a Release of Information with his health care provider to allow Bianca to communicate with Seth's insurance company(ies) regarding the child's treatment, coverage and bills.

(Emphasis added.)

The decree requires the parties to share the "cost of all reasonable and necessary uncovered medical expenses." Because Seth provides the insurance, we presume he is "provided notice of any uninsured claim or denial of payment."

medical expenses" are defined as provided in the Iowa Child Support Guidelines. The Iowa Child Support Guidelines Rule 9.12(5) (effective January 1, 2018) provides, "Uncovered medical expenses" includes all reasonably necessary "medical expenses for the child(ren) not paid by insurance." Medical expenses include a wide array of care as identified by the rule. *See* Iowa Child Support Guidelines Rule 9.12(5).

With respect to Exhibit 13—a billing statement for Child Psychiatric Associates, P.C.—Seth was never informed prior to the child's counseling session regarding the need for the services and never consented to pay a share of the costs. Moreover, Bianca has also not presented evidence that the services were reasonably necessary.

Exhibit O is a chart showing various medical services provided to M.B. However, the testimony depicts some of the services were provided by out-of-network providers. We believe rule 9.12(5) implies a reasonableness requirement that in-network providers be first used, but if it is reasonable and necessary to use an out-of-network provider, then the parents shall proportionately share in all such costs. There would be little reason to impose an obligation to carry insurance for a child if the other parent had no obligation to first use in-network providers. Accordingly, we believe Seth should have been first informed and consented to such out-of-network services, unless it was otherwise reasonable and necessary to use out-of-network providers. Here, Seth did not consent, and Bianca has not shown it was reasonable and necessary to incur medical expenses with an out-of-

network provider.[7] We are unable to discern what services were from in-network providers and out-of-network providers or the amount sought by Bianca, and thus, find no reason to disturb the district court's ruling denying reimbursement for medical costs.

*C. Appellate Attorney Fees.* Each party requests appellate attorney fees. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.* We have considered the parties' respective abilities to pay, Seth's partial success on appeal, and Bianca's need to defend and partial success on appeal, and we determine Seth should pay $2000 of Bianca's appellate attorney fees.

*D. Conclusion.* On appeal, we affirm as modified the visitation terms—modifying the weekend, Wednesday night, holiday and M.B.'s birthday visitation terms. On the cross-appeal, we reverse the denial of retroactive application of the increased child support and affirm on all other issues. We remand for further proceedings consistent with this opinion.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON CROSS-APPEAL; AND REMANDED WITH DIRECTIONS.**

---

[7] There was no evidence the services could not have been provided by an in-network provider.