# IN THE COURT OF APPEALS OF IOWA

No. 24-2060
Filed July 23, 2025

**KAITLYN MARIE RICHTER,**
       Plaintiff-Appellee,

**vs.**

**ANDREW MICHAEL BRIGGS,**
       Defendant-Appellant.

_____

       Appeal from the Iowa District Court for Bremer County, Christopher Foy,
Judge.

       Andrew Briggs appeals from a district court modification order that placed
the parties' child in the physical care of the child's mother. **AFFIRMED.**

       Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC,
Cedar Falls, for appellant.

       John J. Wood and Kate B. Mitchell of Beecher, Field, Walker, Morris,
Hoffman & Johnson, P.C., Waterloo, for appellee.

       Considered without oral argument by Schumacher, P.J., and Buller and
Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

Andrew Briggs appeals from the order modifying the physical care provisions of a custodial decree relating to E.B., a daughter he shares with his former girlfriend, Kaitlyn Richter. While Andrew agrees that a change from joint physical care is necessary given the distance between the parental homes, he challenges the district court's decision to place E.B. in Kaitlyn's physical care rather than his own.[1] On our de novo review, we affirm the district court's decision to place physical care of E.B. with Kaitlyn.

## I.      Background Facts and Prior Proceedings

Andrew and Kaitlyn were never married but became parents to E.B. in 2019. By 2021, the couple had separated and entered into a stipulated agreement granting them joint legal custody and joint physical care of E.B. At that time, Andrew lived in Waterloo and Kaitlyn lived in Waverly.

Both Andrew and Kaitlyn moved on with other relationships. Kaitlyn started dating Christian, her now fiancé,[2] and moved to Ankeny with him in 2021. Andrew started dating Heather, his now wife, that same year. They moved into a home in Cedar Falls in 2022. In 2023, Andrew and Heather had a daughter, M.B.

Even given the distance between Ankeny and Cedar Falls, Andrew and Kaitlyn maintained joint physical care of E.B. for several years, modifying the physical care schedule when needed to accommodate both families. They were

---

[1] Andrew also challenges the child support award. But that challenge is conditioned on this court modifying the physical care placement of E.B. As we do not disturb the physical care placement of E.B., we do not disturb the child support award.

[2] Kaitlyn and Christian were set to marry a few weeks after the modification trial.

able to do so for a few reasons. First, both were fairly reasonable and generally put E.B.'s needs first. And second, Kaitlyn was able to set her own work schedule as a nurse and adjunct professor, allowing her to schedule her parenting time around Andrew's rotating work schedule as a deputy sheriff.

But when it came time to register E.B. for preschool, it was apparent to everyone that a joint physical care arrangement would no longer work given the distance between the two homes. Kaitlyn initiated this modification, seeking to have E.B. placed in her physical care given her flexible work schedule. Andrew also sought physical care of E.B., noting that placement with him would keep E.B. and her half-sister, M.B., together.

The matter proceeded to trial, and the district court acknowledged that "[w]e have two strong parents here." Ultimately, the district court determined that physical care of E.B. should be placed with Kaitlyn. Andrew appeals that determination.

## II.     Standard of Review

We review equitable actions, such as this Iowa Code chapter 600B (2023) action, de novo. *See* Iowa R. App. P. 6.907; *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017); *Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994). In doing so, we examine the entire record anew while giving weight to the district court's factual findings and deference to its credibility determinations, though we are not bound by those determinations. *Nicolou*, 516 N.W.2d at 906.

## III.     Discussion

To modify the physical care provisions of a custodial decree, the party seeking modification must first establish by a preponderance of the evidence that

there has been a material and substantial change in circumstances that is more or less permanent and relates to the welfare of the child.[3] *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). Both Kaitlyn and Andrew agree that there has been a material and substantial change in circumstances given the location of the parents' current homes. So, the question before us is who has a superior ability to minister to the needs of E.B. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016).

Andrew contends the district court did not adequately consider E.B.'s sibling relationship with M.B. when it placed physical care of E.B. with Kaitlyn. When making a physical care determination, we generally try to keep siblings, including half-siblings together. *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981); *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). "However, simply because one parent has physical care of a half-sibling does not mean the parent must have physical care of the child at issue." *Hyde v. Mann*, No. 16-1452, 2017 WL 2461611, at *4 (Iowa Ct. App. June 7, 2017). "While it is important to keep siblings together, ultimately the child's long-term best interests are the paramount consideration." *Id.* Even after taking E.B.'s sibling relationship with M.B. into account, we still conclude that E.B.'s interests are best served by placing her in Kaitlyn's physical care.[4]

---

[3] As Andrew and Kaitlyn never married, this action is governed by chapter 600B. But Iowa Code section 600B.40 provides that we look to chapter 598 and the same physical care considerations as we do in dissolution proceedings. *See Johnson v. Hopp,* No. 24-0952, 2025 WL 1177354, at *2 (Iowa Ct. App. Apr. 23, 2025).

[4] E.B. has never resided full-time with her half-sibling. Under the new visitation schedule for Andrew, the parties equally share the summer.

Kaitlyn's daily life is more conducive to meeting E.B.'s day-to-day needs given her flexible work schedule. Kaitlyn is able to get E.B. ready each day and take her to school most days, except for the limited occasions when Christian would have to do school drop-offs when Kaitlyn works in her adjunct professorship. And once E.B. finishes school for the day, Kaitlyn can be home to care for her and to provide for all her needs.

Conversely, Andrew works second shift—3:00 p.m. to 11:00 p.m. most days.[5] He would be able to spend about an hour each morning with E.B. and take her to school. He would have to rely on Heather and other family members to do the lion's share of daily parenting duties like picking her up from school, taking her to any extracurricular activities, preparing her dinner, and putting her to bed. And past experience has shown that Andrew's work is not particularly adaptable when needed to meet E.B.'s needs. As an example, when it came time to register E.B. for a preschool program, Andrew did not handle the registration because he had to be at a training facility without cellphone reception at the time registration opened. Instead, his wife registered E.B. for preschool.[6] We do not fault Andrew for the inflexibility associated with his work in law enforcement, but our polestar

---

[5] On select Wednesdays Andrew has training that takes place during the day in lieu of his second-shift schedule. When Andrew works his regular second-shift schedule, he can eat dinner at home while on patrol duty.

[6] E.B. ultimately did not attend this preschool program after Kaitlyn called the school district to inquire whether E.B. would be able to attend part time. Andrew asks that we interpret Kaitlyn's involvement with the preschool as a "deliberate effort[] to sabotage [his] preschool choice" and contends it reflects negatively on her. We understand that Andrew believes that Kaitlyn acted nefariously, but on this record, it is just as likely that she was just doing her due diligence to confirm E.B. could attend the preschool part time after receiving conflicting information.

must be the child's best interest and which parent is better able to minister to the child, as demonstrated by the specifics of the record before us.

Ultimately, we, like the district court, conclude Kaitlyn is better suited to meet E.B.'s needs than Andrew given the flexibility of her own daily responsibilities. The record reflects that E.B. has two invested parents. We urge the parents to continue to focus on E.B.'s needs and encourage them to maintain their positive coparenting relationship as they transition from a joint physical care arrangement to a physical care and visitation arrangement.

## IV.   Attorney Fees

Kaitlyn asks that we award her $7425 in appellate attorney fees. We have discretion to award appellate attorney fees in chapter 600B modification actions. *See* Iowa Code § 600B.26 ("In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees."). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Hensch*, 902 N.W.2d at 827. Following our consideration of these factors, we decline to award appellate attorney fees.

**AFFIRMED.**